Good morning, your honors. May it please the court, I'm Matthew Hoppeck on behalf of the petitioner. Good morning, Mr. Hoppeck. If you would, there's a button to your right there on the podium. You can raise that a little bit. I think we'll be able to hear you better. Okay, that's fine. Your honor, I believe I.T. disabled that because of the video setup. Ah, okay. It's a video. We want Judge Strass to see. I'll lean down. This is an asylum appeal about the government of Honduras. And about a 10 or 15 year span of time when the government of Honduras, it now appears, was infiltrated by a criminal organization called the MS-13. An immigration judge in Kansas City denied asylum by saying that this court's decisions bound him to conclude that opposing a criminal gang like that is not a political opinion. His assessment of this court's cases was wrong. The court has never said that an immigration judge is bound to make that kind of ruling, that kind of legal ruling. But our main dispute, and I think the bulk of my argument is going to be. What did the opposition amount to? Here it was an opposition to collect taxes on their behalf. So every tax resistor would regard, I mean, if you're saying that, you're saying this was an opposition to a government, so does every tax resistor essentially get asylum? No, although we don't get there in this case because the judge didn't make that factual ruling. He said as a matter of law, this court's cases don't allow it. But you're saying your case is that he was a tax resistor, isn't that right? Well, that's right, but my answer is that under the administrative law. The machinery. The IJ has to make a factual ruling. The machinery makes that, okay. But as far as the merits of the argument is, that's it. Well, there's some testimony in the record. He said I opposed them because I'm an honest, hardworking person. And a realistic judge could say I don't find that to be a political opinion as a matter of fact. Okay. But the judge here didn't say that. So I want to start by talking about administrative notice because I think that's the cleanest issue and the clearest issue that justifies remand. Asylum cases right now are taking so long to adjudicate. This gentleman entered the United States in 2013. His trial wasn't until 2018, and his appeal was decided in 2021. So eight years after he entered. While his appeal was pending, a new revelation established by the Department of Justice when it indicted the president of Honduras' brother was made public. That the president of Honduras' brother was cooperating with this international gang that they had infiltrated parts of the government. So even though the fact finder had already made his decision, on appeal the petitioner filed a motion or filed a brief asking the BIA to take administrative notice of changed country conditions. Things have changed, and we want you to take notice of it. And in the first shot, the board... How does that change the country conditions? It changes the political opinion claim because initially perhaps there's not clear enough evidence that the government is assenting to this infiltration by this gang. But at least the argument at the agency was now it shows that high levels of the Honduran government were in on it, that they were part of it. Was the brother a member of the government? He was. Not the person who was charged? Yes. The person who was convicted was a government official. He was, and I don't remember his exact role. But also his indictment talked about members of Congress. Would it matter what his role is? It would matter if the board had addressed it. Or if he has some policymaking authority. If the board had said, we're not going to take administrative notice because this is irrelevant or because we just don't want to do it. That's a discretionary determination. This court can review it for abuse of discretion. But here the board didn't say yes or no. They didn't say we're not going to take administrative notice. Instead they said our role is only to review the evidence that existed at the time of the trial, which was wrong. Its own regulations say that it can take, it doesn't have to take, but it can take administrative notice of changed country conditions. So would that be requiring abuse of discretion? Only if they had ruled on it. But they didn't rule on it. And the Accardi case says that a failure to exercise discretion isn't itself an exercise of discretion. It's an error of law. So naturally my client filed a motion to reconsider. He said, hey, board, you guys forgot to rule on our request for administrative notice. And in denying the motion to reconsider, they again don't mention administrative notice. They don't cite the regulation on administrative notice. Again they say we only look at the record that was before the judge. So your, I'm sorry, you're finished your sentence. So your position is that even if, and I'm not saying this is true, but even if it's obvious that the board is going to say, well, we're going to exercise our discretion, we're not going to look at it, and even if it were obvious that that would be, that ruling would be affirmed, we still have to remand because of Chenery, is that it? I think so. Okay, I just want to make sure. Yeah, and I don't think the board made it obvious here. They didn't make an alternative ruling. But also. No, I know. I think the Chenery case has been bolstered quite recently by the Supreme Court in the DHS versus Regents case last term. But what the board did in denying the motion to reconsider, they said, well, we could have remanded this case if you had filed a motion to remand. But since you didn't, we're not going to. Which again, it's a bit like walking up to the lunch counter and ordering a ham sandwich and having the agency say, we can't serve you any roast beef today. We didn't ask for roast beef. We didn't ask for remand. We asked for administrative notice. And the agency can't twist your argument into something else and then say we're denying that thing. They have to directly say we are or are not taking administrative notice. It's a straight-up issue. I think the cases are fairly clear in this circuit that this court doesn't have to wade into divining what the agency might have said if it had taken up the issue. Really, it's a simple remand for the agency to say whether they'll consider this change of country conditions in Honduras or not. They may say we don't find it relevant. In their argument, in their briefing, the Attorney General says, well, the board could have not considered it because an indictment is not a factual predicate. That's a pretty good argument. Except the board didn't make that argument. We've also outlined in our reply brief how the board routinely takes administrative notices of indictments, even though they're not factual predicates. It's page 18, footnote 4 of our brief. There's three examples of recent cases where the board has taken administrative notice of indictments. And then the last thing is the irony is not lost. It's an indictment drafted by the Department of Justice, who is the defendant in this case. They wanted the district court to find those facts to be true. And, in fact, this gentleman was convicted based on that indictment. So, yes, it's an indictment. It's not the final decision. But certainly it's an allegation made under oath, made by an officer of the court. And it's enough that the agency could have considered it and said, okay, something is up in Honduras. Something has changed or something is more serious than it was at the time of trial. And we're going to consider it. The agency could have also said, no, thanks. We're not interested in considering it. There's a case cited in our briefing called DeBrenner v. Ashcroft from the 90s,  And, in that case, the agency had said, your opposition to the Shining Path or the reason they targeted you was because of your wealth. Because they demanded a money extortion. But, in that case, it's a good example because there they did file additional evidence at the board. And the board accepted it. And it became part of the record because they took administrative notice. The other reason DeBrenner, I think, is a good case for the petitioner, Is that it was a challenge about what the reason the people targeted them was for. Even though they were a non-governmental entity. And even though they demanded money, the board had said that this was about your wealth. The record was clear enough that it was political. And, here, it's not like opposing any government or any gang in Central America would be a political opinion. The petitioners don't take that position. But I think Honduras is a special case. We've learned a lot more about Honduras since, not just the president's brother, But since these filings, the president of Honduras has been indicted, extradited to the United States. And so, what was happening in Honduras at the time of this situation, When they demanded that our client collect taxes, is different than is happening, I think, in other Central American governments. Another thing I want to mention is the one-year filing issue. So, the board said that this asylum application wasn't filed on time. And so, the petitioner had waived that argument at the board. The record is just exceedingly clear that he didn't. There was a class settlement called Mendez-Rojas v. Wolf. That settlement said that late applications could be cured by filing a notice, Saying that I hadn't been told about the one-year filing. He filed a Mendez-Rojas notice at page 25 of the record. And the board says the argument's waived. The board's wrong about that. And if the court were to remand on this administrative notice issue, I think we would ask the court to also remand on this error on the one-year filing. Which is important because it's one of the two reasons they've denied asylum. They've said you didn't even get out of the gate because you filed your application late. The last thing I want to talk about is Nexus. I know there are a lot of other issues in the brief, unfortunately. But the issue of Nexus, I think, is sort of the issue lurking underneath all of these things. We think administrative notice is so important to Nexus that remand for administrative notice should take care of it and let the agency figure it out on remand. But even if the court were to get into the merits of this Nexus issue, the Board of Immigration Appeals just fundamentally misstated what the judge had done. It said that the judge had made a factual ruling that the connection between the collecting taxes was really just general criminality. That was the word the board used. But searching the immigration judge's decision, you don't find that fact-finding. The judge didn't say, I'm making a factual ruling about criminality. He said, I'm bound by this court's cases saying I'm not allowed to tie politics to gangs, to opposing gangs, which isn't the case. Now the Attorney General argues that the Nexus here, the reason they targeted him was because he owned a car. It's a big dispute in the briefs. But it's a real, I think, logical fallacy because the record is clear that they targeted him in the first place, asked him to collect taxes because he had a car. But the reason they threatened to kill him wasn't because he had a car. It was because he said no to collecting taxes. Now are these really taxes? The record describes them as war tax. And then there are two reports, not just the testimony, but the... But, I mean, they're not official government taxation. It's the gang wanting, essentially, protection money, isn't it? I mean, you pay us or we'll hurt you. Yeah, I mean, there's so much in the record about how it is taxation. Even though they're not formally part of the government, the government, through its police and military, cooperate. They get paid off. These gangs are able to control your water. They can shut off your water if you don't pay their taxes. It looks a lot like taxation, even though it's not coming from the federal government because the government is so deeply, intricately linked in these gangs. So our argument is that if it's not governmental, it's quasi-governmental, which is enough, I think, for a political opinion claim. Thank you. Thank you, Mr. Hopwick. Mr. Nelson. Thank you. Good morning. May it please the Court, Aaron Nelson for the respondent, the Attorney General. Your Honors, despite what Petitioner's Counsel has promised about the far-reaching aspects of this case, this case involves the robbery of and the attempted gang recruitment of Petitioner in Honduras. And our position is that under substantial evidence review, the record does not support, let alone compel, the conclusion that he was or would be targeted based on a political opinion, real or imputed. Indeed, there's no evidence that he held a political opinion. The facts of the harassment and threats that he experienced are as follows. He was robbed at gunpoint once by four hoodlums. There was nothing spoken about a motive for the robbery or why they targeted him, but they took his cash, his cell phones, his personal effects. He was a distributor of Amway, and therein they found that they discovered that he travels a lot. So when Petitioner was asked in his testimony, and he offered in his written asylum application, why were you targeted, he said, because I have a car. And so the initial face-to-face and the only face-to-face encounter was a robbery. Subsequent to that, there was a note on his car that said, we see that you move around a lot. We'd like you to help us. Subsequent to that, he received messages on his phone that threatened, if he didn't help them collect their extortion, that they would harm him. Now, there's nothing in the record that suggests, let alone compels, that the gangs were targeting him or drawn to him by some kind of imputed anti-gang opinion. They never faced each other again. Again, he was targeted because he had a car. Now, the opposing counsel says that this is some kind of red herring, but this is what he said, and the record shows at three different places. Now, I'd like to turn attention to the administrative notice question, because it's clear that Petitioner really hangs their argument on administrative notice. The issue of the superseding indictment, which was raised in the administrative appeal brief, was in support of the denial of asylum. Therein, former counsel said that the brother of the former president of Honduras had been indicted in the Southern District of New York. So about this administrative notice indictment, I would like to say several things. First, the indictment itself bears a 2015 docket number, so it's an open question of whether this was really new evidence or new information. Second, the regulation at issue, which Petitioner's brief selectively quotes, actually has an important qualifying statement, which is the board will not engage in fact-finding in the course of deciding cases. Now, then it also says it may accept, and it lists, the old version lists, the kinds of documents that it can accept on administrative notice. But generally, they are uncontroversial facts. But what's controversial about an actual court decision? Well, it wasn't a court, again, it's not a court decision. It's actually just an indictment. A filing. And they But it's not a disputed filing, though, is it? The fact of the filing is not disputed, but based on the, you know, one, I guess I would stand on the premise that the board does not take and weigh evidence in the first instance. And if we had a system or if we had instances where the Department of Homeland Security was asking the board to take administrative notice, let's say, of applicants, criminal indictments, which frankly happens, it's not asked a lot, but could happen, it's almost as if it's a backdoor way of entering evidence, whereas if the proper course, procedural course were followed, which is to file a motion to reopen based on changed country conditions and allegedly new evidence, it gives the other side a chance to say, well, we oppose this motion to reopen. This is not new evidence. The country conditions have not changed. But here in that administrative appeal brief, they cite the regulation in footnote 11, I believe, and they don't even really ask for administrative notice. They say the board may or the board can take administrative notice. But I've heard nothing this morning, nor in the brief, that says that the board has to. The board shall. Again, it may, uncontroverted facts, but there's no duty to accept evidence. And, in fact, as I said, if they started to do that. So is your sense of what occurred is that the motion to take administrative notice was denied, or is it as the appellant represents that it was simply not decided? It was not decided. And, in fact, there was really no formal motion in the administrative appeal brief. It basically was prior counsel presented, I believe there were 18 footnotes in that brief, citing mostly to extra record evidence, social science treaties, monographs on Honduras, and gang problems in Central America, things that were not before the immigration judge. So the board actually did not rule on that evidence, except for it's basically the standard precept of board procedure, which is that we don't review and accept evidence in the first instance. And I would say that it would be very dangerous to say that they should have accepted evidence. Again, the regulation that they cite says that they should not. And the updated version of that regulation actually says that if further fact finding is needed, I'm sorry, it says that a party asserting that the board cannot properly resolve an appeal without additional evidence must file a motion to remand or a motion to reopen. And as we say in our brief, a petitioner could file a motion to reopen if this was such weighty and lofty new evidence, but up to this date has not. Again, we would say that this would be an attempt for a kind of backdoor submission of evidence that would not allow the other side to properly oppose such a procedure. And I would like to turn to counsel's assertion that the board routinely accepts indictments, as takes administrative notice of routinely, he said routinely accepts administrative notice of indictments. And his brief at 18 cites three cases before the agency. And in the first case, it was the applicant himself who presented his indictment in ancillary criminal proceedings. In the second case, the DHS filed a motion requesting that the board accept new evidence on appeal, and there was a formal motion, not just a footnote, formal motion, and there was no objection to that motion. And in the last case, Fernando Monge Butrago, the board said that it may take administrative notion of official documents that are already in the record. So, counsel promises something that his own citation actually does not support. On the issue of Chenery, I turn to the issue of Chenery. In the reply brief, they say that we violated Chenery by offering a reason that the board did not or declined to take administrative notice. But actually, we stand on what we wrote in the brief at that point by averring that we were responding to his insistence that the regulation directs, allows, directs the taking of administrative notice and new evidence when our brief was actually responding to the regulation itself. Uncontroverted facts, uncontroversial facts, and so where we were saying that an indictment is not a, you know, it's a criminal allegation that hasn't even been proved. So, at bottom, I guess I would say that there's nothing in the record to compel the conclusion that the petitioner was or will be targeted for a political opinion or an imputed political opinion. It just simply doesn't, he didn't have an opinion and to the extent that the gang targeted him, they, there's nothing in the evidence that shows that they cared to the extent that we could massage the record and sort of divine a political opinion for him. There's nothing that shows that they even knew or even cared about that when he himself repeatedly said, I guess I was targeted because I have a car. And they said in the note to him, you travel a lot, you could help us with this. So, if there are no further questions, we'll stand on the points that we articulated in our brief. I see none. Thank you, Mr. Mills. Thank you, Your Honors. We agree with the Attorney General that the issue of administrative notice was not decided. That's enough to remand this case to the agency because the agency has to take the first bite at the apple. What's frustrating in a case like this is that we file them. Is there no question of materiality in terms of the answer to their question as to whether even assuming that that information was submitted that it would have no impact on the outcome? So, my first answer is that the board didn't say so. The board said we're not going to consider it. So, this court couldn't rule in the first instance that it's immaterial. But it is material because it absolutely goes to this question of political opinion. There are some procedural questions that the Attorney General also raised, but they're wrong. There's nothing in their regulations that say you have to file a motion for administrative notice. In fact, in the board's own practice manual, there's an excerpt of it at page six of our reply brief. It says, if new evidence is submitted, that submission may be deemed a motion to remand proceedings. The board's own practice manual says you don't need a motion. Submitting evidence with your brief can be considered a request for remand and to send back to the agency. So, really, we would ask the court, I think we're right on the facts. I think the indictment of the Honduran president's brother is critical to figuring out what nature these gangs have. Are they quasi-governmental entities, like we've argued, or are they not? But that's a factual determination the agency is well-equipped to make. And if it can't make it on the first round, it can't address it even when we file a motion to reconsider, which should save this court some energy because the agency can correct its own errors, then it deserves a remand order for the court to send this back and say, your regulations allow for administrative notice. This party asked for administrative notice. When you didn't address it, they filed a motion to reconsider. You still didn't address it. You have to say yes or no, whether you'll take administrative notice of this critical, I think, groundbreaking change in Honduras. The other argument by the Attorney General is that it can't be raised in a footnote. Unfortunately, that's not in the agency's regulations either. And I would follow up. The Attorney General said that you have to raise this in a motion to give the other side a chance to respond. Well, it was raised in their appellate brief, and the other side did respond with their own appellate brief. And then the board itself addressed these documents. It's not like they missed them. They said, we're not going to consider them because they're new. It's not like they missed the footnote or something like that. This is a simple question of procedure where the board now wants to impose new rules that don't exist. And instead of applying its own regulations to address a simple question, will you take administrative notice of changes that happen in the country? Thank you very much. Thank you, Mr. Hoppe. The court thanks both counsel for participation in argument this morning. We will take your case under advisement and render a decision in due course. Thank you. Madam Clerk, I believe that concludes our scheduled arguments for this morning.